**[ORAL ARGUMENT SCHEDULED APRIL 23, 2026]**

No. 25-5290

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, et al.,

Plaintiffs-Appellants,

v.

DONALD TRUMP, et al.,

Defendants-Appellees.

————————————

On Appeal from the United States District Court
for the District of Columbia

————————————

## REPLY BRIEF OF APPELLANTS

————————————

Kaitlyn Golden
Pooja A. Boisture
Kayla M. Kaufman
Robin F. Thurston
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kgolden@democracyforward.org

Lauren E. Bateman
Karla Gilbride
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
 lbateman@citizen.org

*Counsel for Appellants*

February 19, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES........................................................................ ii

GLOSSARY ............................................................................................... v

INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 1

ARGUMENT .............................................................................................. 3

I.     Defendants' actions have perceptibly impaired Oxfam's core
       business activities. ........................................................................... 3

II.    AFGE's and AFSA's claims should be heard in federal district
       court. ............................................................................................. 10

       A.   AFGE and AFSA have standing to challenge the wholesale
            closure of USAID. ................................................................. 10

       B.   Federal district court is the appropriate forum to hear AFGE's
            and AFSA's claims.................................................................. 15

CONCLUSION ........................................................................................ 22

CERTIFICATE OF COMPLIANCE ........................................................ 24

CERTIFICATE OF SERVICE ................................................................. 25

# TABLE OF AUTHORITIES*

**Cases**                                                                                                  **Pages**

*AFGE v. Sec'y of Air Force*,
  716 F.3d 633 (D.C. Cir. 2013) ........................................................ 22

*Am. Anti-Vivisection Soc'y v. USDA*,
  946 F.3d 615 (D.C. Cir. 2020) ..................................................... 5, 7

* *Axon Enter., Inc. v. FTC*,
  598 U.S. 175 (2023) ................................................................. 18, 19

*Block v. Cmty. Nutrition Inst.*,
  467 U.S. 340 (1984) ................................................................. 21, 22

*Ctr. for Biological Diversity v. U.S. Dep't of the Interior*,
  144 F.4th 296 (D.C. Cir. 2025) ................................................... 7, 8

*City of Waukesha v. EPA*,
  320 F.3d 228 (D.C. Cir. 2003) ......................................................... 13

*Diamond Alt. Energy LLC v. EPA*,
  606 U.S. 100 (2025) ....................................................................... 8, 9

*Drs. for Am. v. OPM*,
  766 F. Supp. 3d 39 (D.D.C. 2025) ................................................... 9

* *FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ............................................... 4, 6, 7, 8, 11, 15

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
  561 U.S. 477 (2010) ......................................................................... 19

---

      * Authorities upon which we chiefly rely are marked with asterisks.

*Hall v. D.C. Bd. of Elections*,
    141 F.4th 200 (D.C. Cir. 2025) ........................................................ 14

*Harmon v. Thornburgh*,
    878 F.2d 484 (D.C. Cir. 1989) ........................................................ 12

*League of Women Voters of United States v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ............................................................ 6

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................ 14

*People for the Ethical Treatment of Animals v. USDA*,
    797 F.3d 1087 (D.C. Cir. 2015) ...................................................... 7

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ........................................................................ 17

*Trump v. CASA, Inc.*,
    606 U.S. 831(2025) ......................................................................... 13

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ........................................................................ 11

*United States v. Fausto*,
    484 U.S. 439 (1988) ........................................................................ 21

## U.S. Code

5 U.S.C. § 7512 ...................................................................................... 16

## Regulations

5 C.F.R. § 351.901 ................................................................................. 16

**Other**

Micheal Igoe, *USAID bars its own experts from agency closeout jobs*,
Devex, (Jan. 26, 2026) .................................................................... 18

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| AFGE | American Federation of Government Employees |
| AFSA | American Foreign Service Association |
| CSRA | Civil Service Reform Act |
| FSLMRS | Federal Service Labor-Management Relations Statute |
| FSA | Foreign Service Act |
| USAID | United States Agency for International Development |

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants' brief distorts Plaintiffs' case from top to bottom. Defendants start by mischaracterizing their own conduct: They describe the case as about their "efforts to restructure the Nation's foreign aid programs," Appellees' Br. 1, and suggest that they merely "realigned" certain functions at the United States Agency for International Development (USAID), *id.* at 9. This case, though, concerns Defendants' decision to completely close USAID, a congressionally created agency, without congressional authorization. Having mischaracterized the action at issue, Defendants misconstrue the concrete injuries that the closure caused Plaintiffs. The record in the case makes plain that Plaintiffs Oxfam America, American Federation of Government Employees (AFGE), and American Foreign Service Association (AFSA) all have suffered the requisite Article III injuries to pursue their claims, and that their claims should be heard in federal district court.

To start, Defendants suggest that Oxfam has experienced harm only to "issue advocacy" and "social interests." But undisputed facts in the record show that Oxfam was forced to recalibrate its projects, at expense to its own operations, following Defendants' closure of USAID.

Defendants' decision has caused Oxfam to incur financial burdens and directly impaired its ability to do its core work, easily meeting the test for cognizable injury to an organization.

Defendants likewise misunderstand the interplay between AFGE's and AFSA's injuries and the merits of this case. Defendants assert that the union Plaintiffs have experienced injuries related only to employment and, therefore, wrongly conclude that those plaintiffs can challenge only employment-related actions. That conclusion misunderstands Plaintiffs' claims, which challenge the wholesale closure of the agency, not any specific personnel action. The union Plaintiffs' ability to challenge that closure is not limited because the harms that the closure caused are tied to their members' employment. In other words, the challenged shutdown caused the loss of jobs at USAID, but the challenge is not to the loss of jobs at USAID.

Moreover, contrary to Defendants' assertions, it is appropriate for AFGE's and AFSA's claims to be heard in federal district court. Defendants suggest that various statutory frameworks provide an "exclusive" pathway that deprives the district court of jurisdiction. But the provisions on which Defendants rely address challenges to adverse

employment actions, which is not the basis for Plaintiffs' claims. Moreover, all three *Thunder Basin* factors support AFGE and AFSA. Bringing their claims before an administrative body would deprive Plaintiffs of meaningful judicial review; their claims do not rely on, and are collateral to, the administrative frameworks cited by Defendants, and their claims fall outside the relevant administrative bodies' employment-related expertise.

This Court should reverse the district court's order and remand the case to the district court to address the merits of Plaintiffs' claims.

## ARGUMENT

### I. Defendants' actions have perceptibly impaired Oxfam's core business activities.

Defendants' claims that Oxfam lacks standing misconstrue both Oxfam's arguments and the record in this case. Undisputed declarations from Oxfam show that the closure of USAID required Oxfam to "reallocate funds away from critical programs" to address the closure of USAID, a textbook injury for organizational standing purposes. JA 97. Defendants also mischaracterize Oxfam's loss of access to technical expertise from USAID as an insufficient informational injury—a type of

injury that Oxfam did not assert. When each of these mischaracterizations is clarified, Oxfam's standing becomes clear.

It is undisputed that the $63 billion gap in humanitarian aid left by USAID's dissolution has required Oxfam to halt life-saving projects, recalibrate its worldwide humanitarian work, and expend significant organizational time, effort, and resources. Appellants' Br. 21–22. These harms to Oxfam's core business activities give it standing here. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024).

Defendants suggest (at 48) that a business is not "ordinarily" injured by "an increase in demand for its services." This suggestion callously ignores what the nature of the "demand" for Oxfam's "services": humanitarian assistance to help millions of people who are suffering because of the withdrawal of foreign aid by Defendants, *see* Am. Br. of ActionAid USA and Unitarian Universalist Service Comm. at 14–29, a vacuum that Oxfam and others are left to fill. Unlike a for-profit business, Oxfam does not benefit from an increased "demand." On the contrary, there is an inverse relationship between the increase in demand for humanitarian services and Oxfam's ability to effectively

4

carry out its core function, with critical resources getting siphoned off to plug urgent gaps left by USAID's abrupt closure.

Defendants also mischaracterize (at 48) Oxfam's injury as an interest in "eliminating demand for its services" and claim that the injury concerns "issue-advocacy" and "social interests." Not so. Oxfam's ability to provide humanitarian relief—its "core business activity"—has been impacted by Defendants' action. *See* JA 96, 97, 137–41. As explained in declarations, Oxfam "will be forced to incur budget deficits or divert funds from other essential, lifesaving activities" to end the projects it can no longer pursue because of Defendants' actions. JA 139*; see also* JA 97 (describing Oxfam's need to "reallocate funds away from critical programs" to address shortfall caused by closure of USAID); JA 137–41 (describing effects of Defendants' actions on Oxfam's humanitarian programs, staff safety, and budget, as well as Oxfam's efforts to "assess gaps and fill in where needed"). That Oxfam has a socially minded mission does not convert the impairment of its humanitarian work into "issue advocacy." Adopting that view would mean that nonprofit organizations would never have organizational standing. That is plainly not the case. *See, e.g., Am. Anti-Vivisection Soc'y v. USDA*, 946 F.3d 615,

619 (D.C. Cir. 2020); *League of Women Voters of United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016).

Contrary to Defendants' assertions, these injuries are directly attributable to the government's decision to shutter USAID. Defendants point to *Alliance for Hippocratic Medicine* to suggest that Oxfam's injury is too attenuated from the agency's closure to support standing. Appellees' Br. 49. *Alliance*, however, does not help Defendants. In that case, the Supreme Court found that the plaintiff doctors had not made the requisite factual showing that actions of the Food and Drug Administration had caused an increase in patients seeking treatment from them, or that the actions had caused a diversion of resources from their other patients. *All. for Hippocratic Med.*, 602 U.S. at 390–91. By contrast, Oxfam has presented undisputed evidence that USAID's closure has caused a shortfall in humanitarian aid that has directly impaired Oxfam's core activities. Until February 2025, Oxfam operated humanitarian programs that relied on USAID support. JA 137. When USAID funding ceased to be available, Oxfam had to participate in recalibration exercises, at substantial cost to its own operations. JA 97. Oxfam was compelled to halt projects entirely, "forc[ing] [it] to incur

budget deficits or divert funds from other essential, lifesaving activities to merely wind down such projects." JA 139. These were not voluntary recalibrations that Oxfam made in response to a new government policy: They were consequences thrust upon Oxfam by the abrupt end of support and coordination from a close partner. *Alliance*, which reaffirmed that a plaintiff has standing when the defendant's actions "directly affected and interfered with [its] core business activities," *id.* at 395, thus supports Oxfam here.

Defendants' efforts to distinguish the cases on which Oxfam relied likewise fall flat. In *American Anti-Vivisection Society*, the plaintiff was forced to engage in conduct outside its "normal annual expenditures," causing a drain on resources, because of the government's inaction. *Am. Anti-Vivisection Soc'y*, 946 F.3d at 619. So too for Oxfam, which was forced to undergo recalibrations and expenditures because of the government's closure of the agency. JA 97, 137–141. In *People for the Ethical Treatment of Animals v. USDA*, the plaintiff organization—like Oxfam—was forced to expend resources based on the government's failure to act. *PETA*, 797 F.3d 1087, 1095 (D.C. Cir. 2015). And in *Center for Biological Diversity v. Department of the Interior*, the only

7

organizational injury alleged was that the government's conduct would require the plaintiff organization to "work harder" at lobbying and other forms of issue advocacy, and the plaintiff did not identify any programmatic expenditures it had to make to fill the gap left behind by the government. *Ctr. for Biological Diversity*, 144 F.4th 296, 315 (D.C. Cir. 2025).

Defendants also argue (at 52–53) that the harm to Oxfam is not traceable to the closure of USAID, but to the actions of third parties. But the shutdown of USAID led to a "massive shortfall" for Oxfam, requiring it to "reallocate funds away from critical programs," JA 97. The shutdown also forced Oxfam to halt work on several UN-funded projects that rely on U.S. government funds, including "three humanitarian projects providing water, sanitation, and other humanitarian assistance in which work has been conducted and [Oxfam has] not received payment." JA 98. Those consequences predictably followed from the shutdown of USAID. *Cf. All. for Hippocratic Med.,* 602 U.S. at 383 ("plaintiff must show that the third parties will likely react in predictable ways that in turn will likely injure the plaintiffs") (cleaned up); *Diamond Alt. Energy, LLC v.*

*EPA*, 606 U.S. 100, 116–17 (2025) (describing how government action targeting one business predictably injures "other linked businesses").

Finally, as explained in the opening brief (at 25–26), Oxfam relied on the "technical know-how, research, and evidence" of USAID, and the agency's closure left a vacuum in the humanitarian relief community. This injury is not an informational one, contrary to Defendants' mischaracterization. Appellees' Br. 53–54. Instead, in conducting its own work, Oxfam "rel[ied] upon" USAID staff expertise to engineer and implement "lifesaving ideas at scale," JA 99; *see* JA 140, and also relied on the technical expertise offered by USAID. JA 140. Without these services, it will be more resource-intensive for Oxfam to engage in its core work. *Id*. This type of injury supports standing. *See Drs. for Am. v. OPM*, 766 F. Supp. 3d 39, 48 (D.D.C. 2025). Defendants try to distinguish *Doctors for America* on the basis that Oxfam does not provide examples of information on which it relied. Oxfam states, however, that it relied on USAID's "technical expertise," which "helps [it] understand how to effectively target communities with assistance on the basis of need and without doing harm in volatile environments." JA 140.

9

## II.   AFGE's and AFSA's claims should be heard in federal district court.

### A. AFGE and AFSA have standing to challenge the wholesale closure of USAID.

**1.**    The closure of USAID harmed AFGE's and AFSA's members who were previously employed by the agency but were terminated as part of the agency closure. This injury plainly supports associational standing. Defendants do not genuinely dispute the unions' associational standing. Appellees' Br. 40. Instead, they suggest (at 40–41) that, because plaintiffs' members' injuries relate to employment, they can challenge only employment-related actions. But in focusing on only one aspect of the causal chain, Defendants miss that the employment-related actions would not have happened without the closure of USAID. Defendants also conflate Plaintiffs' challenge with their standing. The shutdown of USAID, a decision made by Defendants and the subject of Plaintiffs' challenge, injured the union Plaintiffs' members by eliminating the positions in which they had been employed. And the relief sought by Plaintiffs is appropriate to redress their injury: The ordinary relief in the face of unlawful agency action is to vacate the action.

10

Defendants seek to restrict the scope of available substantive claims based on the injury experienced by AFGE, AFSA, and their members. But Article III requires only that a plaintiff suffer an injury in fact caused by the challenged action and likely to be redressable by the court. *See All. for Hippocratic Med.*, 602 U.S. at 380. That is, it looks to the causal connection between the injury and the challenged action, not between the injury and the substance of Plaintiffs' claims. For example, in *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972), the Supreme Court explained that a plaintiff who experienced aesthetic injury—based on impairment of the ability to enjoy the scenery, natural and historic objects, and wildlife of the park—would have standing to challenge the construction of a road through the park. In such a case, where the plaintiff's injury stems from a step (chopping trees) taken to implement the agency action (building the road), the claim is not limited to challenging the chopping down of trees. Likewise here, Plaintiffs may challenge unlawful agency action—the closure of USAID—that undisputably caused them harm.

11

The scope of relief sought by AFGE and AFSA does not undermine their standing. Defendants posit (at 40) that these Plaintiffs may challenge employment actions only, not the closing of USAID. But when unlawful agency action injures a plaintiff, the default rule is that the entire unlawful agency action is set aside following judicial review. *See Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."); *see also* Appellants' Br. at 29–30 (collecting cases). Defendants point to no exception for agency actions that cause employment-related harms. Defendants made a final decision to shutter USAID, and the harms to AFGE and AFSA followed directly therefrom. *See* JA 160 (Defendant Rubio listing "reducing the size of the workforce" as part of the overall goal that "the remainder of the Agency [to] be abolished"). Indeed, an order directing Defendants to rehire staff alone would not remedy AFGE's and AFSA's injuries because, without an order vacating the decision to close the agency, there would be no agency to which their members could return.[1]

12

Defendants likewise err in conflating the requirement for final agency action with AFGE's and AFSA's standing inquiry. Appellees' Br. 44. The union Plaintiffs have been injured, as required by Article III, in all the ways explained. *See* Appellants' Br. 27–28. Those injuries were caused by Defendants when they closed USAID. Whether that closure was a final agency action is not a question implicated in this appeal, but is instead a question for the district court as it considers the merits of Plaintiffs' claims on remand. When assessing standing, the court assumes a plaintiff can prevail on their claims. *See City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003) ("Indeed, in reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.").

Finally, AFGE's and AFSA's interest in resuscitating USAID is not "common to all members of the public." As former employees of the

---

[1] Defendants' citation to *Trump v. CASA, Inc.*, 606 U.S. 831 (2025) (at 45) is inapt. There, in considering whether the scope of the injunction was broader than necessary to afford complete relief, the Supreme Court made clear that the issue was distinct from the question of standing. *See id.* at 839 n.2 (2025). Further, the Court expressly noted that its decision did not speak to the scope of relief under the APA. *Id.* at 847 n.10.

13

agency, they have a particularized interest in the existence of USAID, the closure of which impacted them personally. *Cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 575 (1992). That the public may also be interested in the existence of USAID does not diminish the standing of AFGE and AFSA, where the closure caused their members to experience concrete, particularized injuries. *See Hall v. D.C. Bd. of Elections*, 141 F.4th 200, 207 (D.C. Cir. 2025) ("As long as each person can be said to have suffered a distinct and concrete harm, we do not hold it against some plaintiffs that they may have company." (internal quotation marks and citation omitted)); *see also Lujan*, 504 U.S. at 578 (explaining that a plaintiff has no standing based on a generalized grievance but must have experienced the concrete injury).

**2.** AFGE and AFSA also have standing as organizations. The closure of USAID interfered with the core activities of both unions, and each was required to divert significant resources to address the closure.

First, the work of both union Plaintiffs focuses on supporting the interests of their members and improving the working conditions of their members, including members who worked for USAID. *See* JA 51–52 ¶¶ 3–5 (AFSA), 143 ¶ 3 (AFGE). The challenged action—closing USAID—

directly impaired this "core business activit[y]." *All. for Hippocratic Med.*, 602 U.S. at 395. Unions cannot perform their core activity of serving their members employed at the agency if the agency does not exist.

Secondly, the diversion of resources that AFGE and AFSA allege is sufficient for organizational standing. Defendants suggest (at 43) that "[b]eing injured by increased demand for one's services is odd to say the least." But diversion of resources away from existing members to address the demand created by a defendant's unlawful conduct is a cognizable injury for organizational standing. *All. for Hippocratic Med.*, 602 U.S. at 391. Here, it is undisputed that the unions have been forced to divert scarce resources to respond to USAID's abolishment. *See, e.g.,* JA 144 (AFGE), 133–34 (AFSA).

## B. Federal district court is the appropriate forum to hear AFGE's and AFSA's claims.

Defendants' argument (at 23–37) that AFGE's and AFSA's claims must be funneled into an administrative body, rather than heard in federal district court, again misunderstands the nature of the action challenged in this case. The union Plaintiffs challenge the wholesale shutdown of the agency, not any particular employment actions. Consistent with this difference, the remedial schemes created

15

for employment actions are ill-suited to hear the constitutional and Administrative Procedure Act (APA) claims brought by Plaintiffs. Finally, as a non-employee plaintiff, who does not challenge employment actions, Oxfam's claims should be heard in district court.

1.    Defendants spill significant ink describing the Civil Service Reform Act (CSRA), Federal Service Labor-Management Relations Statute (FSLMRS), and Foreign Service Act (FSA) as providing "exclusive" remedies. Appellees' Br. 3–6, 24–25. But nowhere in Defendants' myriad citations are any statutory provisions requiring claims challenging the wholesale closure of an agency—or anything remotely similar—to be first brought before any of these administrative bodies. The provisions Defendants point to instead address challenges to reductions in force, 5 C.F.R. § 351.901, and other adverse employment actions, *See, e.g.,* 5 U.S.C. § 7512 (covering suspensions, reductions in pay, and furloughs).

2.    These statutory schemes provide for exclusive jurisdiction over employment claims different in kind from "the type" brought by Plaintiffs. Unlike in an employment suit, Plaintiffs do not challenge the specific termination of any employee or the procedures used during

16

Defendants' reduction in force.[2] Plaintiffs instead bring claims under the constitution and APA to challenge the closure of USAID. Defendants focus solely on the harms experienced by AFGE's and AFSA's members. But doing so ignores that courts examine the substance of the claims, not the underlying injury.

Moreover, all three *Thunder Basin* considerations, *see Thunder Basin Coal Co. v. Reich,* 510 U.S. 200 (1994), demonstrate that the union Plaintiffs' claims should be heard in federal court. *First*, channeling the union Plaintiffs' claims would deprive them of all meaningful judicial review. Defendants argue it is sufficient that each of AFGE's and AFSA's members could bring their claims individually, seeking relief for "lost pay, benefits, or other cognizable financial harms." Appellees' Br. 27–28. But again, this fundamentally misunderstands AFGE's and AFSA's case, which does not seek monetary relief or relief for any specific employee, but instead seeks relief to address the unlawful shuttering of the agency. And contrary to Defendants' assertions, the passage of time is relevant here:

---

[2] Indeed, Plaintiffs' lawsuit was filed before any reductions in force occurred at USAID.

17

Defendants are actively taking steps to complete the closure of USAID. JA 162–64; *see also* Michael Igoe, *USAID bars its own experts from agency closeout jobs*, Devex (Jan. 29, 2026), https://perma.cc/LN9H-2XQL. Once the shutdown is completed, there will be no agency left to which employees can be reinstated, and the more time that passes, the harder it will be to recreate the lost expertise, projects, and international relationships. *See* Appellants' Br. 34.

Defendants also suggest (at 30–31) that it is of no consequence that Plaintiffs could not obtain their desired relief, because alternative relief, like financial compensation, may be available through administrative pathways. But relief for any particular employee would not redress the injury experienced across AFGE's and AFSA's membership, much less the diversion of resources experienced by AFGE and AFSA.

Defendants' attempts (at 31) to distinguish this case from *Axon* and *Free Enterprise Fund* fail. It is of no matter that Plaintiffs do not allege that they would be subject to a constitutionally defective process if they were required to proceed before an administrative body. Both of those cases brought challenges alleging that "an agency is wielding

18

authority unconstitutionally in all or a broad swath of its work." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 189 (2023); *see Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,* 561 U.S. 477, 490 (2010) ("[P]etitioners object to the Board's existence, not to any of its auditing standards."). Here too, Plaintiffs bring a challenge that Defendants have wielded their power unconstitutionally.

*Second*, Plaintiffs' challenge is wholly collateral to the various statutory frameworks that Defendants cite. Here, Defendants again conflate their view of Plaintiffs' injuries with the merits of their claims, suggesting (at 32) that they challenge only employment actions. That is incorrect for all the reasons explained above. Plaintiffs bring constitutional and APA claims challenging the closure of USAID, JA 83–88, and thus such claims are wholly collateral to those that might be brought under the administrative statutes discussed by Defendants.

Defendants also argue (at 34–36) that Plaintiffs' constitutional claims are dressed-up statutory claims. That argument, however, addresses the merits of Plaintiffs' claims and should be left to the district court on remand. For purposes of this Court, the question is

19

not whether the claims are constitutional or statutory, but whether they invoke questions related to the agency-administered employment statutes and seek relief available under those statutes. They do not.

*Third*, Plaintiffs' claims fall outside the expertise of administrative agencies. Defendants again suggest (at 36) that Plaintiffs challenge employment actions only and therefore the relevant bodies have the requisite expertise. But addressing the merits of Plaintiffs' claims does not require any analysis of the CSRA, FSLMRS, or FSA—the statutes squarely within those agencies' expertise. And the case presents no threshold questions related to employment. It instead requires an examination of constitutional and statutory provisions to determine whether the closure of USAID was lawful. These claims are far outside the expertise of the relevant administrative bodies.

**3.** Defendants agree that Oxfam cannot pursue its claims before the administrative bodies. Appellees' Br. 29. Their assertion that, as a result, Oxfam cannot bring its claims at all is plainly incorrect. Indeed, Defendants agree that Oxfam is *not* challenging

20

"personnel action." *Id.* The cases that Defendants cite are therefore inapposite.

The decision on which they primarily rely, *United States v. Fausto*, 484 U.S. 439 (1988), addressed whether an employee could obtain "judicial review of adverse personnel action [suspension] for which the CSRA does not provide him a right of review." *Id.* at 443. The Court held that Congress's decision to withhold a remedy under the CSRA for the category of employee at issue "display[ed] a clear congressional intent to deny the excluded employees the protections of [the Act]—including judicial review—for personnel action covered by" it. *Id.* at 447. Here, by contrast, nothing in the CSRA suggests that Congress intended to preclude access to judicial review for *non*-employees bringing *non*-employment claims. The CSRA simply does not speak to that situation.

*Block v. Community Nutrition Institute*, 467 U.S. 340 (1984), also cited by Defendants, is likewise inapplicable. There, the statutory scheme at issue established a mechanism for dairy handlers—but not consumers—to seek review of milk market orders issued by the Secretary of Agriculture. *Id.* at 347. The Supreme Court held that the

omission of consumers from the review provision indicated that Congress intended to foreclose consumer review. *Id*. By contrast, Oxfam's claims fall entirely outside the CSRA's statutory review scheme. Finally, *AFGE v. Secretary of Air Force*, 716 F.3d 633 (D.C. Cir. 2013), discusses only the unions' access to an administrative review process, not the rights of non-union parties, like Oxfam.

In short, Defendants offer no authority to support the notion that a remedial scheme applicable to employees bringing employment-related claims bars a non-employee from bringing non-employment claims under the APA and the Constitution.

## CONCLUSION

The district court's order granting Defendants' motion to dismiss should be reversed.

Respectfully submitted,

/s/ *Kaitlyn Golden*                    Lauren E. Bateman
Kaitlyn Golden                          Karla Gilbride
Pooja A. Boisture                       Allison M. Zieve
Kayla M. Kaufman                        Public Citizen Litigation Group
Robin F. Thurston                       1600 20th Street NW
Democracy Forward Foundation            Washington, DC 20009
P.O. Box 34553                          (202) 588-1000
Washington, DC 20043                    lbateman@citizen.org
(202) 448-9090
kgolden@democracyforward.org

*Counsel for Appellants*

February 19, 2026

23

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,128 words. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (a)(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

/s/ *Kaitlyn Golden*
Kaitlyn Golden

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

/s/ *Kaitlyn Golden*
Kaitlyn Golden